

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-18-2008

# Martinelli v. Penn Millers Ins Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1956

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Martinelli v. Penn Millers Ins Co" (2008). *2008 Decisions.* Paper 1426.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1426

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-1956
_____

KAREN MARTINELLI,

Appellant,

v.

PENN MILLERS INSURANCE COMPANY


_____

On Appeal from United States District Court
for the Middle District of Pennsylvania
(D. C.  No. 02-cv-02292)
District Judge: Honorable Thomas I. Vanaskie
_____

Submitted Under Third Circuit LAR 34.1(a)
March 7, 2008

Before: BARRY, JORDAN and HARDIMAN, *Circuit Judges.*

(Filed: March 18, 2008)


_____

OPINION OF THE COURT
_____


HARDIMAN, *Circuit Judge.*

In this employment discrimination case, Karen Martinelli appeals following a jury verdict in favor of her former employer, Penn Millers Insurance Company (PMIC). Martinelli asserts various trial errors and argues that the District Court erred in granting PMIC summary judgment on her hostile work environment claim.

I.

Because we write exclusively for the parties, who are familiar with the facts and proceedings below, we will not revisit them here. Martinelli first claims that the District Court erred when it precluded testimony from one of Martinelli's former co-workers, Roseanna Klim, who allegedly suffered disparate treatment while employed at PMIC.

"[A]s a general rule, evidence of a defendant's prior discriminatory treatment of a plaintiff or other employees is relevant and admissible . . . to establish whether a defendant's employment action against an employee was motivated by invidious discrimination." *Becker v. ARCO Chemical Co.*, 207 F.3d 176, 194 n. 8 (3d Cir. 2000) (internal citations omitted). But such evidence must have a proper purpose and be admissible under Federal Rules of Evidence 401 - 403. *Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 520 (3d Cir. 2003). The proponent of such evidence "must be able to articulate a way in which the tendered evidence logically tends to establish or refute a material fact in issue, and that chain of logic must include no link involving an inference that a bad person is disposed to do bad acts." *Id.* at 520-21 (internal quotations and citations omitted).

2

Here, Klim would have testified that she performed the functions of an underwriter but was not paid as such. The District Court found that this testimony had little probative value in establishing PMIC's intent to discriminate because the discriminatory nature of the past conduct was unclear and it was dissimilar to Martinelli's situation. We find that the District Court did not abuse its discretion in so holding. *See Hurley v. Atlantic City Police Dep't.*, 174 F.3d 95, 110 (3d Cir. 1999). As the District Court aptly noted, evidence of prior acts is admissible where "the inference of the employer's discriminatory attitude came from the nature of the prior acts themselves," but not where the evidence is offered merely for "the purpose of establishing the fact that the employer engaged in any particular act or course of conduct in connection with the plaintiff's termination." *Becker*, 207 F.3d at 194 n.8. It was no abuse of discretion for the District Court to conclude that Klim's circumstances were not sufficiently similar to Martinelli's to allow an appropriate inference about PMIC's state of mind in this case to be drawn from Klim's experience. At most, Klim's testimony tended to show that PMIC underpaid employees who were doing underwriting work, and that it was mistreating Martinelli in the same fashion as it had previously mistreated Klim. This evidence becomes even less probative in light of the District Court's observation that Martinelli and Klim had different job titles and focused on entirely different sectors of PMIC's business.

The difference in circumstances between Martinelli and Klim also precludes any suggestion that Klim's testimony should have been admitted as evidence of a pattern or

3

plan to underpay women who performed underwriting work. To be admissible as pattern or plan evidence, the two acts "must be connected, mutually dependent, and interlocking" and must "consist of incidents [that] were sufficiently similar to earmark them as the handiwork of the same actor." *Id.* at 197 (internal citation omitted); *See also J&R Ice Cream Corp. v. Cal. Smoothie Licensing Corp.*, 31 F.3d 1259, 1269 (3d Cir. 1994). Klim's testimony falls well short of this standard.

We are similarly unpersuaded by Martinelli's suggestion that the District Court erred by instructing the jury that "this case is to be decided, solely, on the employer's treatment of Ms. Martinelli, it has nothing to do with any other employees." This was nothing more than an accurate statement of the law.

We also agree with the District Court that Martinelli was not prejudiced by the limitations initially placed on the testimony of a former PMIC Assistant Underwriter, Ann Bedwick pertaining to the claims she made. The District Court initially held that Bedwick could not testify that she was considered an underwriter by the insurance agents and brokers with whom she dealt. It also prohibited her from testifying that a male employee, Barry Corrigan, had been suspended but not terminated for failing to keep track of certain insurance forms. Yet Bedwick subsequently testified, without objection, that "[t]he agents and brokers that I worked with, they considered me an Underwriter, they didn't know I was still an Assistant Underwriter." Furthermore, PMIC's Vice-

4

President of Agribusiness Underwriting, Harold Roberts, testified about Corrigan's probation in some detail, and indicated that PMIC had not ultimately terminated Corrigan.

## II.

Martinelli next argues that the District Court erred when it excluded the EEOC's written determination that PMIC's treatment of Martinelli had violated Title VII. In *Coleman v. Home Depot, Inc.*, 306 F.3d 1333 (3d Cir. 2002), we held that "the decision of whether or not an EEOC Letter of Determination is more probative than prejudicial is within the discretion of the trial court, and to be determined on a case-by-case basis." *Id.* at 1345 (internal citations omitted). We stressed that "considerations of undue delay, waste of time, or needless presentation of cumulative evidence, which are often necessary to counter an EEOC report," were particularly salient in this context. *Id.* Here, the District Court concluded that the letter's claim to be a "determination as to the merits," coupled with the fact that it originated from an authoritative government agency, could confuse and mislead the jury and unfairly prejudice PMIC. The District Court also concluded that the letter would provoke needless presentation of cumulative evidence. Because these concerns were entirely consistent with Rule 403 and our holding in *Coleman*, we hold that the decision to exclude the EEOC letter was well within the discretion of the learned trial judge.

## III.

Martinelli also claims that an unfairly prejudicial comment by PMIC's counsel required the District Court to declare a mistrial. Our review of a district court's decision regarding the grant of a new trial for prejudicial conduct by counsel is deferential. *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 207 (3d Cir. 1992). Because a district court "is in a far better position than we to appraise the effect of the improper argument of counsel," *Reed v. Philadelphia, Bethlehem & New England R.R. Co.*, 939 F.2d 128, 133 (3d Cir. 1991), we defer to its assessment of the prejudicial impact and whether its curative instructions to the jury are sufficient to expunge the prejudicial impact of counsel's statements. *Fineman*, 980 F.2d at 207.

Here, PMIC's counsel asserted during his opening statement that Martinelli had failed to exclude from an insurance policy an insured with a history of drunk driving, which resulted in a $1 million loss to PMIC when that driver was involved in a fatal car accident while intoxicated. We agree with the District Court that counsel's reference to intoxication, while perhaps improper, was not so prejudicial as to deny Martinelli a fair trial, particularly in light of the District Court's curative instruction and the isolated nature of counsel's remarks. *See Salas v. Wang*, 846 F.2d 897, 908 (3d Cir. 1988) (finding "one isolated statement" to jury insufficient to warrant new trial). Martinelli's claim that PMIC was able "to emphasize over and over the One Million Dollar payment

6

and the fact that the driver was drunk at the time of the fatality" is not supported by the record.[1]

IV.

Martinelli's final assignment of error is that the District Court erred in granting partial summary judgment to PMIC on her hostile work environment claim. Although the parties focus much of their argument on the question of pretext, we will affirm for the same reasons stated by the District Court: no reasonable juror could find that the alleged scrutiny of Martinelli's work was objectively hostile or abusive.

This conclusion is not altered by our suggestion in *Moore v. City of Philadelphia*, 461 F.3d 331 (3d Cir. 2006), that employees claiming retaliation by workplace harassment are no longer required to show that the harassment was severe or pervasive enough to constitute a violation of Title VII's anti-discrimination provision. *Id.* at 341-42 (discussing implication of *Burlington Northern & Santa Fe Railway. Co. v. White*, 126 S. Ct. 2405 (2006)). It is true that the Supreme Court's decision in *Burlington Northern* broadened the definition of retaliatory conduct, but the Court also emphasized that Title VII was not intended to permit employees complaining of discrimination to immunize themselves from the "petty slights or minor annoyances that often take place at work"

---

[1] Martinelli can point to only one similar remark by counsel during the entire trial. During his summation, PMIC's counsel referenced the accident and stated "that's the fatality which, ultimately, cost the company a million dollars, and there's no dispute, the company paid that money." Counsel then read from Martinelli's note to a broker which referenced the specific circumstances of the accident.

7

simply by complaining of discrimination. *Burlington Northern*, 126 S. Ct. at 2415. PMIC's scrutiny of Martinelli's work, while unpleasant and annoying, did not create the sort of hostile work environment that would satisfy Title VII's anti-retaliation provision.

For all of the foregoing reasons, we will affirm the judgment of the District Court.